JEFFREY LeCROY, by and through his Next Friend, CHARLES R. Le-CROY, JR., v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 14 October, 1959.)

1. Insurance §§ 47, 54—

A three-wheeled motor scooter known as a "mailster" is an automobile within the meaning of a policy insuring insured and his family against injuries resulting from being struck by an automobile.

Higgins, J., not sitting.

Appeal by defendant from *McLean, J.,* March, 1959 Term, of Gaston.

This is an action to recover "Expenses for medical services" under a policy of insurance.

Defendant, Nationwide Mutual Insurance Company, is the insurer and Charles R. LeCroy, Jr. the insured in "Family Automobile and Comprehensive Liability Policy," No. 61-68-250, issued 3 October, 1957. Plaintiff, Jeffrey LeCroy, is the son of insured and on 21 October, 1957, was 15 months old and a resident of insured's household.

On 21 October, 1957, plaintiff, while playing in the yard of his home, was struck and seriously injured by a vehicle, known as a "mailster." The vehicle was owned by the United States Post Office Department and was being operated by an employee of the Department.

The "mailster" is of the class of motor vehicles generally referred to as a "motor scooter." It has 3 wheels, 2 in the rear and 1 in front, with conventional tires, and is 5 feet long and about 4½ feet wide. It is enclosed with metal body without doors and has fenders, a luggage compartment, 1 seat with springs and back rest, and windshield 34 inches wide with electric wipers. The body stands 12 inches above ground level and the front end has 4 inch clearance. It has conventional lights, horn and turn signals. The motor consists of an 8 horse power, 4 cycle, gasoline engine. It has a drive-shaft differential, axle and universal joint. The weight is 800 pounds and pay load capacity is 600 pounds. It has a shift gear with 3 forward speeds and reverse and is equipped with 3 wheel mechanical brakes, emergency hand brake, electric starter, foot accelerator, speedometer, shock absorbers and handlebars for steering. License plates cost $3.00, the same as for a motorcycle.

Because of the injuries to plaintiff expenses were incurred for surgery, hospitalization, X-rays, medical attention and nursing care in the amount of $721.75. Plaintiff, as third party beneficiary under

the policy of insurance, filed claim with defendant for the expenses incurred. Defendant denied liability. Plaintiff instituted this action.

The case came on for trial and in apt time defendant moved for judgment of involuntary nonsuit. The motion was overruled and exception was duly noted. There was verdict for plaintiff.

From judgment conformable to verdict defendant appealed and assigned, error.

*Whitener & Mitchem for plaintiff, appellee.*
*L. B. Hollowell and Hugh W. Johnston for defendant, appellant.*

Moore, J.  There is a single question for decision on this appeal: Was the vehicle which struck and injured plaintiff an "automobile" within the terms of the insurance policy sued on and the law applicable thereto?

Appellant admits that the policy was issued and was in force at the time plaintiff was injured.

The pertinent provisions of the policy obligates defendant:

"Part III. . . . To pay all reasonable expenses incurred within one year from date of accident for necessary medical, surgical, X-Ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing . . . : . .

"Coverage G: . . . To and for the named insured and each relative who sustains bodily injury, . . . caused by accident, while occupying or through being struck by an automobile. . . ."

Appellant concedes that plaintiff was injured by accident and that the items of medical expense sued for are the items mentioned in the policy. It is further agreed that plaintiff is a "relative" within the meaning of the above quoted policy provision. A "relative" is defined by the policy to be "a relative of the named insured who is a resident of the same household."

The word "automobile" is defined in PART II of the policy. PART III (in which the above quoted coverage appears) states that "the definitions under Part II apply to Part III. . . ." The definition is as follows:

" 'Automobile,' with respect to insurance under coverage F of this policy (this suit involves coverage G), means a land motor vehicle, trailer or semi-trailer, other than crawler or farm type tractors, farm implements and, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads." (Parentheses ours.)

In PART III under DEFINITIONS appears the following:

" 'An automobile' includes a trailer of any type."

In PART III under EXCLUSIONS the following appears:

"This policy does not apply under Coverage G to bodily injury . . . through being struck by (i) a vehicle operated on rails or crawler-treads, or (ii) a farm type tractor or other equipment designed for use principally off public highways, while not upon public roads. . . ."

The gist of appellant's contention in this case is set forth in the following quotation from its brief:

"It is the defendant's position that a three wheeled motor scooter commonly known as a 'mailster' is not an automobile within the meaning of part three of defendant's policy. A motor scooter is more similar to a motorcycle.

"The insuring agreement between the plaintiff and the defendant uses the term AUTOMOBILE. This term is undefined under part three of the policy."

Part three of the policy indicates unqualifiedly that the definitions under part two apply to part three. None of the definitions given in part two are repeated or redefined in part three. "Automobile" is defined in extremely broad terms in part two. Appellant undoubtedly suggests that this definition in part two has limited application only, to Coverage F, and that it is not intended to apply to Coverage G. If this be true, it is worthy of note that the very broad definition of "automobile," quoted above, is applied to "Comprehensive Family Liability — not Automobile," that is, to obligation of insurer to pay on behalf of insured liability for personal injury and property damage to third parties not caused by automobiles. Thus the comprehensiveness of liability under Coverage F is sharply reduced when "automobile" as an exclusion becomes almost every type of "land motor vehicle." If defendant's construction is followed, Coverages D and E under PART II (obligation of insurer to pay on behalf of insured liability for property damage and personal injury to third persons caused by insured's use of automobiles) leaves "automobile" undefined. Appellant apparently contends that the term "automobile," where undefined, should be given a restricted meaning. If this is true, a large area of damage is left without coverage. In effect, appellant insists on a broad definition for its protection and a narrow definition for its liability.

The exclusion clause from Part III, quoted above, is worthy of note. It definitely and by express terms applies to Coverage G. It excludes bodily injury through being struck by a vehicle operated on rails or crawler-treads or a farm type tractor or other equipment designed for use principally off public highways, while not upon pub-

lic roads. If it was the intent of the policy that the term "automobile" should be considered in a restricted sense, why exclude the above mentioned machines which do not fall within the meaning of the term, but which may be classified as "land motor vehicles"? Is it the intent of the policy that farm tractors and similar vehicles be classified as automobiles while "upon public roads"? We do not decide these questions. Even so, the policy language is at best misleading and confusing. If the definitions of "automobile" given in several parts of the policy were applied in this case, the "mailster" would fall squarely within the definition.

Assuming, but not deciding, that the term "automobile" is undefined in the policy as it relates to this action, we turn to a consideration of the problem on this basis.

Appellant contends that the "mailster" should be classified as a motorcycle and that a motorcycle is not an "automobile." The weight of authority is that a motorcycle, either with or without a side car, is not included in either of the terms, "automobile," "private motor driven automobile" or "motor driven car," as used in insurance policies. *McDonald v. Insurance Co.*, (Tenn. 1935), 79 S.W. 2d 555; *Bullard v. Insurance Co.*, (Ga. 1934), 173 S.E. 855; *Moore v. Insurance Co.*, (Tenn. 1931), 40 S.W. 2d 403; *Deardorff v. Insurance Co.* (Pa. 1930), 151 Atl. 814; *Neighbors v. Insurance Co.* (Ark. 1930), 31 S. W. 2d 418; *Landwehr v. Insurance Co.* (Md. 1930,) 150 Atl. 732; *Colyer v. Insurance Co.* (N.Y. 1928), 230 N.Y.S. 473; *Perry v. Insurance Co.* (N.J. 1927), 138 Atl. 894; *Salo v Insurance Co.* (Mass. 1926), 153 N.E. 557; *Laporte v. Insurance Co.* (La. 1926), 109 So. 767. But there are contrary holdings. *Bolt v. Insurance Co.* (S.C. 1930), 152 S.E. 766; *Burrus v. Insurance Co.* (Mo. 1930), 40 S.W. 2d 493.

Our Court has followed the majority view. *Anderson v. Insurance Co.*, 197 N.C. 72, 147 S.E. 693. In the *Anderson* case plaintiff was injured while riding on a motorcycle (without a side car). The insurance policy covered injury by collision of or accident to "a motor driven car in which insured is riding or driving." In deciding that the motorcycle was not a "motor driven car," the Court emphasized the following points: (1) A car stands upright whether in operation or not; a motorcycle cannot keep its equilibrium when not in operation. (2) A car has a body in which passengers sit and which protects in some measure from the perils of the highway; a motorcycle has no body for protection of the rider. (3) A motorcycle has no front or rear protection in the form of bumpers or fenders. (4) A rider on a motorcycle is more exposed to danger and takes a greater risk of

injury. (5) The policy uses the word "in" instead of "on" in referring to the occupancy; a passenger rides "on" a motorcycle and not "in" it. The Court concludes that the use of the word "car" instead of "vehicle" and the word "in" instead of "on" indicates that the intention of the policy is to exclude motorcycles. The reason for exclusion, the Court suggests, was the greater risk involved in insuring against the perils inherent in the use of motorcycles.

The matters emphasized in the *Anderson* case are significantly favorable to the plaintiff here. The vehicle in the case at bar stands upright whether in operation or not; it has a body and fenders for the protection of passengers — the record is silent as to bumpers —, a rider is no more exposed in this motor scooter than in a car; an operator or passenger rides "in," not "on," the motor scooter. In these respects and in practically every essential respect disclosed by the record, the motor scooter is a "motor driven car" or "automobile," and not a motorcycle. In the *Anderson* case the injured party was a rider and in all the motorcycle cases herein cited the injured parties were riders. In the instant case the plaintiff was a by-stander. If the difference is significant, it seems to us that the advantage is with the plaintiff herein. From the facts in the record there is nothing to indicate that the motor scooter is more inherently dangerous, to riders or to third parties, than a more common type automobile. Indeed, the comparison is favorable to the scooter with its low powered engine. There is nothing in the nature and construction of this vehicle which will justify the conclusion that there was an intention that the policy exclude it from the term "automobile." The express terms of the policy justify no such inference.

The same conclusion was reached in *Womack v. Insurance Co.* (La. 1938), 184 So. 357. In that case the vehicle was known as a "traffic car." It had three wheels, a closed body with space therein for carrying goods, inclosed differential, dual chain drive, service and emergency brakes, a 74-cubic inch motor and a windshield. The driver occupied a saddle which he straddled and he steered the vehicle by means of handlebars. The vehicle was used in making deliveries of merchandise and had a load capacity of one thousand pounds. Insured was killed in a collision with another vehicle while operating the "traffic car." The policy insured against bodily injuries, or death resulting therefrom, by reason of "collision or any accident to . . . any motor driven truck inside of which the insured is riding or driving . . . provided this policy does not cover insured while riding in or on a motorcycle, or in or on any side car, trailer or other attachment to a motorcycle. . . ." The Court held that insured, at the time of the accident, was riding in a "motor driven truck."

The definition of the term "motorcycle" in G.S. 20-38(4) does not describe the "mailster." Furthermore the purpose of the definition referred to is for regulation of license fees and has no application to the situation here presented. Fundamentally license fees of vehicles are based on weight.

We find no error in the ruling of the trial court in the instant case. The judgment below is

Affirmed.

HIGGINS, J., not sitting.