BENJAMIN FRANKLIN MURRAY, PLAINTIFF-APPELLANT, v. NATIONWIDE MUTUAL INSURANCE COMPANY, STATE FARM INSURANCE COMPANY AND UNITED STATES LIABILITY INSURANCE COMPANY, DEFENDANTS-APPELLEES

No. COA95-375

(Filed 2 July 1996)

**1. Judgments § 62 (NCI4th)— ambiguous judgment—reference to pleadings and other proceedings**

In an appeal from a summary judgment involving slow payment by insurance companies of a disputed judgment arising from an automobile accident where the summary judgment was apparently inconsistent but it was evident that none of the parties found it so, the Court of Appeals followed the assignments of error and the issues as briefed and argued by the parties. Under *Tucker v. Bank of Ashe*, 204 N.C. 120, when the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and other proceedings.

**Am Jur 2d, Judgments §§ 93-97.**

**2. Trial § 78 (NCI4th)— summary judgment—verified allegations of complaint**

Although defendant argued in a appeal from a summary judgment that plaintiff relied on the mere allegations of his pleadings, plaintiff properly verified his complaint and was en-

1

titled to have it considered as equivalent to a supporting or opposing affidavit.

**Am Jur 2d, Summary Judgment §§ 18, 32 et seq.**

### 3. Insurance § 1135 (NCI4th)— unpaid judgment—unfair trade practice—summary judgment

The trial court erred by granting summary judgment on the issue of unfair trade practices for defendant Nationwide in an action arising from a car wreck where plaintiff obtained a judgment for damages which included prejudgment interest and eventually filed this action which included claims for beach of contract to pay an insurance claim and unfair and deceptive trade practices. The wording and facts alleged in plaintiff's cause of action number one, which the trial court allowed *in toto* and incorporated into the judgment, substantively align with the facts described in N.C.G.S. § 58-63-15(11)(b,f,h,m and n), and a violation of N.C.G.S. § 58-63-15 constitutes an unfair trade practice in violation of N.C.G.S. § 75-1.1 as a matter of law. Plaintiff's claims have at their heart breaches of insurance contracts by defendants; whether or not all of plaintiff's claims prove viable, some the existing judgments demonstrate damages for the delayed payment of interest due, costs assessed but not timely paid, and Nationwide's improper assertion of a med-pay credit. That relief would not have been due in the absence of damage to plaintiff and it is apparent that plaintiff has forecast actual and proximate injury.

**Am Jur 2d, Insurance §§ 2012 et seq.**

### 4. Insurance § 1135 (NCI4th)— unpaid judgment—unfair and deceptive practices—summary judgment

Summary judgment for defendants was reversed as to State Farm and U.S. Liability for unfair and deceptive trade practices in an action which arose from an unpaid judgment arising from an automobile accident. The rule of *Wilson v. Wilson*, 121 N.C. App. 662, that a private right of action under N.C.G.S. § 58-63-15 and N.C.G.S. § 75-1.1 may not be asserted by a third-party claimant against the insurer of an adverse party when plaintiff is neither an insured nor in privity with the insurer is not applicable because this plaintiff is in contractual privity with State Farm and U.S. Liability and because the problems sought to be addressed by the *Wilson* court are not raised by the facts of this case. The facts

alleged and verified in these causes of action suffice to state a *prima facie* case for an N.C.G.S. § 58-63-15(11) violation in that the damages underlying plaintiff's claim for unfair trade practices are those which were allowed by the trial court, *i.e.*, the prejudgment and postjudgment interest and unpaid costs owed by defendants. The fact that defendants paid their share of interest and unpaid costs prior to judgment does not negate the possible existence of damages; plaintiff's alleged damages for unfair and deceptive trade practices (with regard to the nonpayment of interest and costs due) existed from the date of occurrence (the first date at which interest was due but not paid).

**Am Jur 2d, Insurance §§ 2012 et seq.**

**5. Insurance § 1135 (NCI4th)— failure to pay judgment—tortious breach of contract—summary judgment**

The trial court erred by granting summary judgment for Nationwide on the issue of punitive damages based on tortious breach of contract. Upon review of the facts alleged in plaintiff's verified complaint and the judgment based on plaintiff's first cause of action, plaintiff has alleged and forecast a tortious act accompanied by some element of aggravation.

**Am Jur 2d, Insurance §§ 2012 et seq.**

Appeal by plaintiff from summary judgment filed 14 December 1994 by Judge Henry V. Barnette, Jr., in Durham County Superior Court. Heard in the Court of Appeals 11 January 1996.

*Poe, Hoof, & Reinhardt, by G. Jona Poe, Jr., and Patrick W. Baker, for plaintiff appellant.*

*Bryant, Patterson, Covington & Idol, P.A., by Lee A. Patterson, II, for defendant appellee Nationwide.*

*Haywood, Denny & Miller, L.L.P., by George W. Miller, Jr., and John R. Kincaid, for defendant appellees State Farm Insurance Company and United States Liability Insurance Company.*

SMITH, Judge.

The central issues on this appeal are whether the trial court properly granted summary judgment for all defendants with regard to plaintiff's claims of unfair and deceptive trade practices, and for defendant Nationwide on plaintiff's claim for punitive damages aris-

ing from Nationwide's alleged tortious breach of contract. Because plaintiff has presented evidence which establishes genuine issues of material fact on these claims, we reverse.

The genesis of this case is a car wreck which occurred on 16 January 1986 in Durham County, North Carolina. On that day plaintiff was driving an automobile behind Ricky Stephenson (Stephenson) on N.C. Highway 15. Stephenson made a sharp left turn, which caused an automobile in the oncoming lane to swerve in order to avoid collision with Stephenson. The car swerving to avoid collision was forced into the lane of plaintiff's travel, resulting in a head-on collision between that driver and plaintiff. The accident resulted in serious injury to plaintiff.

Plaintiff thereafter sued and in 1990 obtained a judgment (the "underlying judgment") against Stephenson for $85,000.00, plus costs, prejudgment and postjudgment interest. Three different insurance companies and three different insurance policies were implicated by plaintiff's judgment. Stephenson was driving another person's car when the accident occurred. The car Stephenson was driving was insured by State Farm Insurance Company (State Farm) for damages up to $25,000.00. Stephenson's personal automobile insurance was with United States Liability Insurance Company (U.S. Liability) for damages up to $25,000.00. Finally, plaintiff maintained an underinsured motorist policy with Nationwide Mutual Insurance Company (Nationwide), which provided coverage up to $100,000.00.

This Court affirmed the underlying judgment *sub nomine Murray v. McCall*, 103 N.C. App. 525, 407 S.E.2d 624 (1991). Petitions for discretionary review were twice denied by the N.C. Supreme Court, with final denial of review becoming effective in January of 1992. *Murray v. McCall*, 330 N.C. 119, 409 S.E.2d 597 (1991) and 330 N.C. 442, 412 S.E.2d 74 (1991). In February and March of 1992, respectively, State Farm and U.S. Liability paid their policy limits of $25,000.00 each to the Durham County Clerk of Court to be applied against the outstanding judgment. At the time these amounts were paid by these two defendants, the underlying judgment was two years old. State Farm and U.S. Liability continued to refuse any payment of interest on the underlying judgment, asserting that, because Nationwide had insisted on appealing the judgment, they were relieved of further liability. This left a balance of $35,000.00 outstanding on the principal due plaintiff per the judgment, not including interest and costs outstanding.

## MURRAY v. NATIONWIDE MUTUAL INS. CO.

[123 N.C. App. 1 (1996)]

In March of 1992, Nationwide tendered a $33,000.00 check to plaintiff, conditioned upon plaintiff releasing Nationwide from any further liability pursuant to the underlying judgment. The amount of the check was $33,000.00, rather than $35,000.00, because Nationwide claimed a $2,000.00 credit for monies previously paid plaintiff for medical expenses (Nationwide's liability policy with plaintiff included a provision allowing for payment of a limited amount of medical expenses, hereinafter the "med-pay credit"). Plaintiff would not sign the release and disputed Nationwide's notion that med-pay credit was due for the previous payment of plaintiff's medical expenses.

In April 1992, Nationwide unconditionally paid $33,000.00 to plaintiff, with plaintiff explicitly reserving future claims against Nationwide. At this point, Nationwide refused to pay any portion of the prejudgment or postjudgment interest (the interest) required by, and due on, the judgment. Nationwide continued to maintain that it was due a $2,000.00 med-pay credit for medical advances already provided to plaintiff. Nationwide's position on the interest issue was that State Farm and U.S. Liability, as the "primary" insurance carriers involved, were solely liable for payment of interest owed.

Negotiations were undertaken by the parties regarding the interest issue and the med-pay credit. During this period, Nationwide told plaintiff that it intended to await, and then follow, the North Carolina Supreme Court's impending decision in *Baxley v. Nationwide*, 334 N.C. 1, 430 S.E.2d 895 (1993) (*Baxley* II), before paying either the accumulated interest, its share of costs, or the $2,000.00 remaining on the judgment as a result of the claim for a med-pay credit.

The failure of the above negotiations led plaintiff to file the instant lawsuit. In July of 1992, plaintiff sued defendants for breach of contract for failure to pay an insurance claim without any just or reasonable cause in law or equity, unfair and deceptive trade practices, tortious breach of contract, and breach of the implied covenant of good faith and fair dealing. In their responsive pleadings in this case, made prior to the N.C. Supreme Court's decision in *Baxley* II, each defendant individually denied any financial obligation to plaintiff other than the judgment principal. As well, defendant Nationwide continued to assert its right to a med-pay credit against plaintiff's recovery, maintaining that this Court's decision in *Baxley v. Nationwide*, 104 N.C. App. 419, 410 S.E.2d 12 (1991) (*Baxley* I) controlled the issue. Nationwide continued to deny exposure for any of

the prejudgment or postjudgment interest due plaintiff, but maintained that this particular issue would also be decided by the *Baxley* II decision. Nationwide advised plaintiff that it intended to apply the rules established in *Baxley* II to the facts in this case on the med-pay and interest issues.

In the *Baxley* II decision (filed 2 July 1993), our Supreme Court reaffirmed the prior decision of the Court of Appeals in *Aills v. Nationwide Mut. Ins. Co.*, 88 N.C. App. 595, 363 S.E.2d 880 (1988). *Baxley* II established that Nationwide (as the UIM carrier) was not entitled, under the terms of its policy, to a med-pay credit for payments made under the medical payments section of the plaintiff's policy. *Baxley* II, 334 N.C. at 12-13, 430 S.E.2d at 902. The medical payment provisions of the policy at issue in *Baxley* II appear identical to those in the UIM policy involved in the instant case.

The *Baxley* II Court reasoned that, since the UIM section of Nationwide's policy obligated the payment of damages to an injured insured (who is legally entitled to recover), the conclusion naturally follows

> that pre-judgment interest is an element of the insured's "damages," and that because Nationwide had agreed to pay "damages" up to its policy limit, Nationwide was liable for pre-judgment interest up to—but not in excess of—that limit as well.

George L. Simpson, III, *North Carolina: Uninsured and Underinsured Motorist Insurance, A Handbook* § 3:18, at 151 (1996); *Baxley* II, 334 N.C. at 11, 430 S.E.2d at 900. The relevant damages portion of the UIM policy in the instant case is identical to that under review in *Baxley* II.

Then, almost *five and a half months* after the *Baxley* II decision (15 December 1993), Nationwide tendered $2,000.00 to plaintiff for the previously claimed med-pay credit. Nationwide's tender was premised nonetheless upon plaintiff agreeing to waive certain rights against Nationwide. This waiver was described by Nationwide as an "acknowledgment and release recognizing the acceptance of the [$2,000.00] as payment in full of principal (emphasis added) of amounts due under the underinsured motorist coverage applicable to the case."

Plaintiff refused to accept the $2,000.00 tender, due to the conditions attached to it by Nationwide. Plaintiff's refusal was based on his belief that Nationwide had "outstanding amounts due to him," which

would have been lost under the conditions presented by Nationwide. Finally, in *March of 1994* (approximately *eight* months after the *Baxley* II decision), Nationwide paid the $2,000.00 amount in dispute to the Durham County Clerk of Court for application against the underlying judgment.

All defendants continued to deny liability for any share of the pre-judgment and postjudgment interest until 29 and 30 June 1994. On those dates, defendants each paid what they considered to be pro-portionate shares of interest and costs owed into the Durham County Clerk of Court. Whether those chosen allocations were proper, under the law and facts applicable to the instant case, is a matter which is *not before us, and is an issue we do not resolve here.*

Defendants' motion for summary judgment in the instant action was heard on 7 November 1994. After consideration of appropriate evidence from each side, the trial court granted partial summary judg-ment to plaintiff on his claim against Nationwide for breach of con-tract in refusing to pay plaintiff's claims against it without just or rea-sonable cause in law or equity (plaintiff's first cause of action). Further, summary judgment was granted plaintiff on his claims against State Farm and U.S. Liability for violating their duty to plain-tiff as a third-party beneficiary of their liability insurance policies by refusing to pay plaintiff's claims for interest and costs without any just or reasonable cause in law or equity (plaintiff's fifth and sixth causes of action).

**[1]** Two preliminary issues must be given heed. First, the judgment appealed from appears to be inconsistent. Paragraph one, of the decree section of the 14 December 1994 summary judgment order, states that plaintiff prevailed on causes of action one, five and six. However, in paragraphs three and four of the same decree section, the trial judge granted summary judgment on counts five and six to State Farm and U.S. Liability. Needless to say, these two rulings can-not coexist.

Because the situation warrants it, we follow the rule from *Tucker v. Bank of Ashe*, 204 N.C. 120, 122, 167 S.E. 495, 496 (1933), to wit:

" 'Wherever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification made apparent, the judgment will be

upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms.' "

*Id.* (citation omitted).

Even though the instant judgment appears inconsistent, it is evident that none of the parties found it so. Each party's statement of the case indicates that the following in fact occurred: The trial court granted summary judgment for all defendants on plaintiff's claims of unfair and deceptive trade practices, and for Nationwide on plaintiff's claim for punitive damages arising from Nationwide's alleged tortious breach of contract. Given the rule cited from *Tucker*, the apparent agreement among the parties as to whom was granted summary judgment for what, and the requirement that we view the evidence in the light most favorable to plaintiff, we follow the assignments of error, and the issues as briefed and argued by the parties. Thus, we now turn to plaintiff's assignments of error as they relate to the summary judgment granted defendants by the trial court below.

[2] As for the second preliminary matter, we note this Court's standard of review from a trial court's grant of summary judgment. A party will prevail on a motion for summary judgment only if the moving party (here, defendants) can show that no material facts are in dispute, and entitlement to judgment as a matter of law. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995). In addition, the record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom. *Id.* Evidence properly considered on a motion for summary judgment "includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971).

Defendants repeatedly argue that plaintiff "relies on allegations in his complaint (rather than any forecast of evidence)," and "is merely relying on the mere allegations of his pleadings." In fact, defendants at various points in their briefs concede "that allegations similar to Appellant's may be sufficient to withstand summary judgment . . . [h]owever, the plaintiff may not rely upon the bare allegations of his complaint to establish triable issues of fact . . . ."

Defendants have premised much of their argument upon the supposed failure of plaintiff to provide a viable forecast of evidence

establishing his claims. Defendants' assessment of plaintiff's forecast of evidence is simply incorrect. In plaintiff's complaint, he alleges specific facts based on personal knowledge. Moreover, "[his] pleading was verified in the manner prescribed by Rule 11(b), sworn to and subscribed before a notary public." *Schoolfield v. Collins*, 281 N.C. 604, 612, 189 S.E.2d 208, 213 (1972). Having properly verified his complaint, plaintiff is entitled to have it " 'considered as equivalent to a supporting or opposing affidavit, as the case may be.' " *Id.* (citation omitted).

Our review of defendants' grant of summary judgment will include all materials properly within the scope of this Court's purview. We now turn to the issues before us, which we will address *in seriatim.*

### Unfair and Deceptive Trade Practices

[3] To prevail on a claim for unfair and deceptive trade practices, a claimant must demonstrate the existence of three factors: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 301, 435 S.E.2d 537, 542, *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1993); *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991). The term "unfair" has been interpreted by our Courts as meaning a practice which offends established public policy, and which can be characterized by one or more of the following terms: "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Miller*, 112 N.C. App. at 301, 435 S.E.2d at 542.

We additionally observe that, if an insurance company engages in conduct manifesting an inequitable assertion of power or position, that conduct constitutes an unfair trade practice. *Johnson v. Beverly-Hanks & Assoc.*, 328 N.C. 202, 208, 400 S.E.2d 38, 42 (1991). People are insured because they wish to curb or eliminate risks to which they are exposed (or because law and public policy require it). *See Aills*, 88 N.C. App. at 597, 363 S.E.2d at 882 (underinsured motorist coverage is optional); *Engle v. State Farm Mut. Ins. Co.*, 37 N.C. App. 126, 132, 245 S.E.2d 532, 535 (automobile liability coverage is mandatory under North Carolina's Financial Responsibility Act, N.C. Gen. Stat. § 20-279.21), *disc. review denied*, 295 N.C. 645, 248 S.E.2d 250 (1978); *Nationwide v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977)

("the Financial Responsibility Act . . . impose[s] liability upon an insurer as a matter of public policy").

When the very event insured against occurs, the party shifting the risk must look to the insurer for recovery. In this situation, the heft of the insurer's position, or bargaining power, is usually in direct proportion to the quantum lost by the insured party. In part due to this polarity of power between insurer and insured, this Court has held that "[e]vidence of negligence, good faith or lack of intent are not defenses to an action under G.S. § 75-1.1 [the statute providing for a cause of action for unfair and deceptive trade practices]." *Miller*, 112 N.C. App. at 301-02, 435 S.E.2d at 542; *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

Our courts have repeatedly defined the insurance business as affecting commerce, when an insurer provides insurance to a consumer purchasing a policy. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986). N.C. Gen. Stat. § 58-63-15(11) enumerates a list of practices which are, as a matter of law, instances of unfair and deceptive conduct. *Bentley v. N.C. Insurance Guaranty Assn.*, 107 N.C. App. 1, 15, 418 S.E.2d 705, 713 (1992). Violation of any form of conduct listed in § 58-63-15(11) operates as a *per se* instance of unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1. *Bentley*, 107 N.C. at 15, 418 S.E.2d at 713. In short, § 75-1.1 is a remedy " 'in the nature of a private action' " for the conduct described by and in § 58-63-15(11). *Miller*, 112 N.C. App. at 302, 435 S.E.2d at 542 (citation omitted).

I. Defendant Nationwide.

(Plaintiff's Second and Third Causes of Action)

N.C. Gen. Stat. § 58-63-15(11) requires that its prohibited acts occur with "such frequency as to indicate a general business practice." *Id.* The prohibited § 58-63-15(11) acts alleged by plaintiff include:

b.   Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

* * * *

f.  Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

\* \* \* \*

h.  Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

\* \* \* \*

m.  Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n.  Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

These allegations, along with the case-specific facts alleged and verified in the complaint, when viewed in the light most favorable to plaintiff, and when viewed against the composition of the judgments already rendered against defendants in this case, indicate plaintiff has made out his *prima facie* case of a § 58-63-15(11) violation.

The trial court granted summary judgment by ruling on, and adopting the language in, plaintiff's first cause of action against Nationwide. The substantive portion of this cause of action conforms to the acts referred to by § 58-63-15(11), in that it reads:

26. Plaintiff has made *numerous demands* upon Defendant Nationwide for the payment of his underinsured coverage pursuant to his policy with said Defendant.

27. Defendant Nationwide has, *without any just or reasonable cause, either in law or equity, refused to pay the claim of Plaintiff* for the amount which the Judgment against Mr. Stephenson exceeded the limits of his insurance coverage plus prejudgment and postjudgment interest and other costs and has therefore breached its contract with Plaintiff to provide underinsurance coverage as stated in Defendant Nationwide's policy of insurance.

(Emphasis added).

MURRAY v. NATIONWIDE MUTUAL INS. CO.

[123 N.C. App. 1 (1996)]

Given the wording and facts alleged in plaintiff's cause of action number one, which the trial court allowed *in toto* and incorporated into the judgment, we find the composition of the judgment substantively aligned with the acts described in § 58-63-15(11)(b, f, h, m and n). As such, this part of the judgment, in and of itself, attests to the unreasonableness of Nationwide's refusal to provide the prejudgment and postjudgment interest required by the underlying judgment. As well, cause of action number one, by its wording, demonstrates that numerous demands were made upon Nationwide for payment or settlement. Demands, such as those described by plaintiff, when made with the frequency alleged, are the type of "general business practice" contemplated by § 58-63-15(11). *Marshburn v. Associated Indemnity Corp.*, 84 N.C. App. 365, 374, 353 S.E.2d 123, 129, *disc. review denied*, 319 N.C. 673, 356 S.E.2d 779, and *reconsideration dismissed*, 320 N.C. 170, 358 S.E.2d 53 (1987); and *see Von Hagel v. Blue Cross and Blue Shield*, 91 N.C. App. 58, 60, 370 S.E.2d 695, 698 (1988).

This Court has established that "[a] violation of G.S. § 58-63-15 constitutes an unfair and deceptive trade practice in violation of G.S. § 75-1.1 as a matter of law." *Miller*, 112 N.C. App. at 302, 435 S.E.2d at 542. However, since § 58-63-15(11) is prescriptive, and does not constitute a cause of action in and of itself, the viability of plaintiff's § 75-1.1 claim requires him to forecast evidence of each requisite element of an unfair and deceptive trade practice. As we have determined *ante*, Nationwide's act of selling plaintiff a policy affects commerce, and its violation of § 58-63-15(11) constitutes an unfair act; therefore, all elements of an unfair and deceptive trade practice action have been forecast, except that pertaining to damages. *Miller*, 112 N.C. App. at 301, 435 S.E.2d at 542.

Defendants argue that because "[a]ll monies that Appellant claimed he was owed have either been paid directly to him or to the Clerk of Court on his behalf," plaintiff has suffered no damage. (A similar argument was advanced by the defendant in *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44, 49, 356 S.E.2d 392, 395 (1987), *disc. review improvidently allowed*, 321 N.C. 592, 364 S.E.2d 140 (1988). However, that argument was summarily rejected by the *Robinson* Court.) The instant judgment indicates that plaintiff's claims in causes of action one, five, and six against defendants were "satisfied in full," prior to the rendering of the trial court's final ruling. Defendants argue that, since they have already paid the claims in dispute here, plaintiff has suffered no damages. This argument has no merit.

## MURRAY v. NATIONWIDE MUTUAL INS. CO.

[123 N.C. App. 1 (1996)]

We reach this conclusion easily, because in the instant judgment—drawn from causes of action one, five, and six—defendants were merely paying damages owed pursuant to the underlying judgment, *i.e.*, interest and costs, and the med-pay credit. Defendants' damage exposure here arises from plaintiff's claims for punitive damages and treble damages for unfair and deceptive trade practices. Unquestionably, potential damages pursuant to these claims have not been paid.

Damages arise and flow from the event causing injury. Under our case law, an injury suffered may provide for both a cause of action sounding in common law (or as provided by statute), and simultaneously constitute conduct which is an unfair and deceptive trade practice. *Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990) ("defendants libeled Ellis Brokerage Company by impeaching it in its trade, thereby proximately causing it actual injury and damages"); and *see United Laboratories, Inc. v. Kuykendall*, 102 N.C. App. 484, 486, 491, 403 S.E.2d 104, 106, 109, (company's breach of restrictive covenants also constituted an unfair trade practice), *disc. review allowed on other grounds*, 330 N.C. 123, 409 S.E.2d 610 (1991); and *decision aff'd by*, 335 N.C. 183, 437 S.E.2d 374 (1993). Plaintiff's claims in the instant matter for unfair and deceptive trade practices (and for tortious breach of contract) have, at their heart, breaches of the insurance contracts obligating payment to plaintiff by defendants. Whether or not all of plaintiff's claims in the instant suit prove viable, the existing judgments for causes of action one, five, and six (against Nationwide, State Farm, and U.S. Liability, respectively) demonstrate damages for the delayed payment of interest due, costs assessed but not timely paid, and Nationwide's improper assertion of a med-pay credit. That relief would not have been due in the absence of damage to plaintiff. We have previously held that

> an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1, . . . will justify an *award of damages* under N.C.G.S. § 75-16 *for injuries* proximately caused. *See Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1986). To recover, however, a plaintiff must have "suffered actual injury as a proximate result of defendant's [unfair or deceptive act]." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. at 471, 343 S.E.2d at 180.

*Ellis*, 326 N.C. at 226, 388 S.E.2d at 131 (emphasis added). Thus, from the record before us, it is apparent plaintiff has forecast actual and proximate injury in his presentation of evidence.

As the above analysis demonstrates, there is evidence in the record indicating plaintiff has made out his *prima facie* case of unfair and deceptive trade practices against defendant Nationwide. We reverse the trial court's grant of summary judgment on this issue.

## II. Defendants State Farm and U.S. Liability

### (Plaintiff's Seventh Cause of Action)

[4] Against State Farm and U.S. Liability, plaintiff's claim for unfair and deceptive trade practices was based on alleged violations of § 58-63-15(11)(b, f, and n). Although the trial court granted summary judgment to defendants State Farm and U.S. Liability on plaintiff's unfair trade practice claim, it did grant summary judgment to plaintiff on his causes of action five and six. Causes of action five and six are virtually identical to each other, except for the named defendant listed in each. The fifth cause of action reads as follows:

### Fifth Cause Of Action

39. Paragraphs 1 through 38 are hereby incorporated by reference as if fully set forth herein.

40. Plaintiff has made *numerous demands* upon Defendant State Farm for the payment of both prejudgment and postjudgment interest on the Judgment against Mr. Stephenson and for the payment of costs incurred by Plaintiff in the trial of said action against Mr. Stephenson.

41. Defendant State Farm has *without any just or reasonable cause, either in law or in equity, refused to pay the claim of Plaintiff* for interest and cost *in violation of its duty* to Plaintiff as a third-party beneficiary under the insurance policy providing coverage to Mr. Stephenson and *pursuant to N.C.G.S. § 20-279.21.*

(Emphasis added). Cause of action number six differs only in that it lists U.S. Liability, rather than State Farm, as the named defendant.

Analysis of the unfair and deceptive trade practice claims against these two defendants must begin with this Court's recent decision in *Wilson v. Wilson and Nationwide*, 121 N.C. App. 662, 468 S.E.2d 495 (1996). In *Wilson*, we established the rule that, when "plaintiff is nei-

ther an insured nor in privity with the insurer . . . a private right of action under N.C.G.S. § 58-63[-]15 and N.C.G.S. § 75-1.1 may not be asserted by a third-party claimant against the insurer of an adverse party." *Id.* at 665, 468 S.E.2d at 497. The reasoning behind this rule is that "allowing such third-party suits against insurers would encourage unwarranted settlement demands, since plaintiffs would be able to threaten a claim for an alleged violation of N.C.G.S. § 58-63[-]15 in an attempt to extract a settlement offer." *Id.* at 666, 468 S.E.2d at 498.

The *Wilson* rule is not applicable to defendants State Farm and U.S. Liability under the instant facts. The first reason for this conclusion is the existence of privity between the instant plaintiff and these defendants. One definition of privity is "a [d]erivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest." Black's Law Dictionary 1199 (6th ed. 1990). Our case law establishes that " '[i]f the third party is an intended beneficiary, the law implies privity of contract.' " *Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 236, 405 S.E.2d 208, 212 (1991) (quoting *Johnson v. Wall*, 38 N.C. App. 406, 410, 248 S.E.2d 571, 574 (1978)). As our Supreme Court emphasized in *Chantos*:

> The victim's rights against the [liability] insurer *are not derived through the insured,* as in the case of voluntary insurance [such as UIM coverage]. *Such rights are statutory and become absolute [as to the liability insurer] upon the occurrence of injury or damage inflicted* by the named insured, by one driving with his permission, or by one driving while in lawful possession of the named insured's car, regardless of whether or not the nature or circumstances of the injury are covered by the contractual terms of the policy.

*Chantos*, 293 N.C. at 440-41, 238 S.E.2d at 604 (emphasis added) (interpreting N.C. Gen. Stat. § 20-279.21).

The injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party. *Lavender v. State Farm Mut. Auto. Ins. Co.*, 117 N.C. App. 135, 136, 450 S.E.2d 34, 35 (1994), *disc. review denied*, 339 N.C. 613, 454 S.E.2d 253 (1995); *LeCroy v. Nationwide Ins. Co.*, 251 N.C. 19, 20, 110 S.E.2d 463, 464 (1959); and *see* 13A Mark S. Rhodes, *Couch Cyclopedia of Insurance Law* § 49:101, § 49:103 (2d Revised Vol. 1982). Therefore, the instant plaintiff is in contractual privity with State Farm and U.S. Liability, and for this reason alone, is not bound by the third-party restrictions set forth in *Wilson*.

Outside the context of privity, it is equally distinguishing that the problems sought to be addressed by the *Wilson* Court are not raised by the facts in this case. The *Wilson* plaintiff's unfair and deceptive practice claim was based on the insurer's prejudgment behavior, whereas all of the conduct complained of here occurred after the underlying judgment was final. *Wilson* rests on this Court's policy concerns regarding possible pretrial litigation tactics between an injured party and the tortfeasor's insurance company acting as a party-defendant. *Wilson,* 121 N.C. App. at 666-67, 468 S.E.2d at 498. For instance, the *Wilson* Court wished to discourage "unwarranted settlement demands" by a plaintiff as a means to thereafter assert an unfair and deceptive practice claim. *Id.* at 666, 468 S.E.2d at 498. Further, the *Wilson* Court reasoned that "[a]llowing a third-party action because of a violation of N.C.G.S. § 58-63-15 . . . would likely put the insurer in a position of conflict with its insured—the party adverse to the third party." *Id.* at 667, 468 S.E.2d at 498. "The insurer has a duty to safeguard the interests of its insured," and should not interpose its interests to the detriment of its insured. *Id.*

In the instant case, none of the above-related policy concerns appear. This case was not in a pretrial posture on the underlying tort claim, when the unfair and deceptive trade practice allegations were made by plaintiff. Thus no *Wilson*-related pretrial safeguards were necessary here. And, as the defendant tortfeasor is not even a party to the current action, concerns over conflicts of interest do not exist in the context spoken to by *Wilson.*

The remainder of our analysis, on plaintiff's unfair and deceptive trade practice claims against State Farm and U.S. Liability, bears similarity to that applied earlier in this opinion against Nationwide. The trial court explicitly granted summary judgment for plaintiff on the grounds stated by plaintiff in causes of action five and six. Causes of action five and six demonstrate that "numerous demands" were made on State Farm and U.S. Liability, and that said demands were refused "without any just or reasonable cause, either in law or in equity." These unjust and unreasonable refusals, the trial court held, were in "violation of [the insurer's] duty to Plaintiff . . . and N.C.G.S. § 20-279.21."

By virtue of the grounds stated for the trial court's grant of summary judgment on these causes of action, the facts alleged and verified therein suffice to state a *prima facie* case for a § 58-63-15(11) violation. The damages underlying plaintiff's claim for unfair trade

MURRAY v. NATIONWIDE MUTUAL INS. CO.

[123 N.C. App. 1 (1996)]

practices are those which were allowed by the trial court, *i.e.*, the prejudgment and postjudgment interest and unpaid costs owed by defendants. The fact that defendants paid their share of this interest and unpaid costs prior to judgment does not negate the possible existence of damages. Plaintiff's alleged damages for unfair and deceptive trade practices (with regard to the nonpayment of interest and costs due) existed from the date of occurrence, which in this case, means the first date at which interest was due, but not paid in accordance with law. Given the trial court's ruling on causes of action five and six, interest became payable on the date the underlying judgment became final (absent a stay, or some other proper reason for delay). *See Baxley* II, 334 N.C. at 8-9, 430 S.E.2d at 901.

For the foregoing reasons, we find material facts in dispute, and conclude that plaintiff has made out his *prima facie* case for unfair and deceptive trade practices against State Farm and U.S. Liability. Summary judgment is thus reversed as to these issues.

### Punitive Damages Based on Tortious Breach of Contract

### I. Defendant Nationwide

### (Plaintiff's Second and Fourth Causes of Action)

[5] The remaining issue is whether the trial court erred by granting summary judgment to defendant Nationwide on the issue of punitive damages based on Nationwide's alleged tortious breach of contract. Defendant Nationwide, in its brief, acknowledges the following:

> The North Carolina Court of Appeals has held that allegations *similar* to Appellant's may be sufficient to withstand summary judgment, provided a forecast of the evidence shows sufficient factual allegations of egregious conduct. In *Robinson v. N.C. Farm Bureau Insurance Company*, 86 N.C. App. 44, 356 S.E.2d 392 (1987), . . . a plaintiff alleged that an insurance company failed to affirm or deny coverage of claims within a reasonable amount of time after proof of loss statements had been completed, *did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear*, and attempted to settle a claim for less than the amount for which a reasonable man would have believed the plaintiff in that case was entitled. *Robinson*, 86 N.C. App. at 50.

(Emphasis added.)

After this description of the similarity between the instant plaintiff's allegations and *the Robinson* plaintiff's allegations, Nationwide, in its brief, adds:

> In [the *Robinson*] case, however, the court noted the factual allegations that backed up the complaint. . . . In fact, Plaintiff asserts in the closing paragraph of Section II, subsection C, (Pl. brief, p. 26), that because he has "sufficiently alleged aggravated conduct" in his Complaint that summary judgment was improper. However, the plaintiff *may not rely upon the bare allegations of his complaint* to establish triable issues of fact . . . .

(Emphasis added). As we have noted earlier, defendant's assessment of the sufficiency of plaintiff's forecast of evidence is flawed. Plaintiff's complaint was verified, and that same complaint was the basis for the summary judgments granted plaintiff in causes of action one, five, and six.

Thus, we find ourselves in agreement with Nationwide that "allegations similar to Appellant's" are in accord with the requirements enumerated in *Robinson*. In *Robinson*, this Court "considered what evidence is sufficient to support a claim for tortious, bad faith refusal to settle a claim when the refusal to settle is *also* a breach of contract." *Robinson*, 86 N.C. App. at 49, 356 S.E.2d at 395. The *Robinson* Court established a nonexclusive list of tortious conduct, which, if accompanied by a breach of contract, would qualify a claim for punitive damages. *Id.* Broadly speaking, aggravating conduct must accompany the tort, but that aggravating conduct may take many forms. *Id.*

In its discussion of the various factors which might constitute aggravated conduct, the *Robinson* Court observed the unfair and deceptive acts described in § 58-63-15(11), and other factors such as "bad faith refusal to settle in a timely manner," and "no [legitimate] basis upon which to deny [the claim]. *Robinson*, 86 N.C. App. at 50, 356 S.E.2d at 396. *In Miller*, 112 N.C. App. at 305, 435 S.E.2d at 544, we stated that "[a] bad faith refusal to provide insurance coverage or to pay a justifiable claim may give rise to a claim for punitive damages."

Considering the forecast of evidence in the light most favorable to plaintiff, we again reference the judgment against Nationwide, which was based on plaintiff's first cause of action, in light of plaintiff's other verified allegations. The first cause of action describes Nationwide's conduct in refusing to pay the judgment principal

exceeding the limits of the primary carriers, prejudgment and post-judgment interest, and other trial court assessed costs. Plaintiff alleges, and the trial court agreed, that Nationwide's conduct was "without any just or reasonable cause." Plaintiff also alleges Nationwide's conduct was aggravated by "willful failure to pay a valid claim," and a "failure to attempt in good faith to effectuate prompt, fair and equitable settlement of this claim, [once] liability ha[d] become reasonably clear."

When considered altogether, we agree with Nationwide that plaintiff's claim closely resembles the factual situation in *Robinson*. In this case though, we also have the judgment based on plaintiff's first cause of action, which attests to the aggravating conduct of Nationwide. Thus, upon review of the facts alleged in plaintiff's verified complaint and the judgment based on plaintiff's first cause of action, we conclude plaintiff has alleged and forecast a tortious act accompanied by some element of aggravation. On this basis, the claimant is entitled to take his case of punitive damages to the jury, and summary judgment is reversed on this issue.

In summary, we reverse the trial court's judgment as to plaintiff's second, third, and fourth causes of action against Nationwide, and the seventh cause of action against U.S. Liability and State Farm. Plaintiff's second cause of action, alleging defendant Nationwide's breach of the covenant of good faith and fair dealing, is part and parcel of plaintiff's claims of unfair and deceptive trade practices and tortious breach of conduct against defendant. Our Supreme Court has recognized that " '[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Bicycle Transit v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted). In addition to the attendant tortious breach of contract implications good faith involves, a lack of good faith and fair dealing by an insurance company squarely exposes that company to an unfair and deceptive practice claim. *Robinson*, 86 N.C. App. at 50-51, 356 S.E.2d at 395. Thus, we also reverse the trial court's grant of summary judgment for Nationwide on plaintiff's second cause of action, since the acts giving rise to this claim are integral to plaintiff's third and fourth causes of action.

On remand, and if necessary, plaintiff will be required to elect " 'to recover either punitive damages under [his] common law claim [tortious breach of contract] or treble damages under N.C.G.S.

§ 75-16, but [he] may not recover both.' " *Kuykendall*, 102 N.C. App. at 492, 403 S.E.2d at 110 (quoting *Ellis*, 326 N.C. at 227, 388 S.E.2d at 132). Also in this case, plaintiff has set forth a panoply of causes of action arising from the same injury. We emphasize that plaintiff may recover for an injury but once. *Barbee v. Atlantic Marine*, 115 N.C. App. 641, 650, 446 S.E.2d 117, 123 (1994). In *Barbee*, we commented:

> [H]aving found that the defendant's acts constituted an unfair and deceptive practice, [the trial court] properly trebled that amount and entered judgment thereon. However, by also entering judgment against [the defendant] on the [underlying claim of] breach of warranty claim, *which was based on the selfsame course of conduct, the court improperly allowed plaintiffs double recovery.*

*Id.* (emphasis added). We encourage the trial court to take care that this rule from *Barbee* is followed, should the necessity for its application arise on remand.

Reversed and remanded.

Judges JOHNSON and JOHN concur.