INMAN, Judge.
 

 *202
 
 When a North Carolina worker is hurt on the job, his injury is within the exclusive scope of the Workers' Compensation Act and he can obtain relief only by pursuing a claim before the North Carolina Industrial Commission (the "Commission"). But when, after the Commission awards the injured worker benefits, an employer's insurance company knowingly provides false information to police to frame him for insurance fraud, resulting in his arrest, incarceration, and indictment on felony charges, the worker's claims for malicious prosecution, abuse of process, and unfair and deceptive trade practices ("UDTP") exceed the scope of the Workers' Compensation Act and are properly before the General Court of Justice.
 

 Plaintiff Mario Seguro-Suarez ("Plaintiff") brought suit against Defendants Key Risk Insurance Company ("Key Risk"), Joseph J. Abriola, Sharon Sosebee, Suzanne McAuliffe, and Cheryl Gless (collectively the "Individual Defendants" together with Key Risk as "Defendants")
 
 [1]
 
 for malicious prosecution, abuse of process, UDTP, bad faith, willful and wanton conduct, conspiracy, and punitive damages. Defendants appeal the denial of their motions to dismiss all of Plaintiff's claims
 
 *745
 
 pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. After careful review of the record and applicable law, we hold that the trial court did not err in denying the motions to dismiss pursuant to Rule 12(b)(1), but that it did err in failing to dismiss Plaintiff's
 
 *203
 
 bad faith and civil conspiracy claims under Rule 12(b)(6). We therefore affirm the trial court's order in part, reverse in part, and remand for further proceedings.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 The record below, consisting primarily of the allegations in Plaintiff's complaint, indicates the following:
 

 In 2003, Plaintiff was working for his employer, Southern Fiber, when he fell from a height of approximately 18 feet onto concrete, striking his head. As a result of the fall, Plaintiff suffered several broken bones and severe traumatic brain injury. He was rendered comatose, required intubation and ventilation support to breathe, and underwent emergency neurosurgery at Carolinas Medical Center in Charlotte, North Carolina, to relieve pressure on his brain. He eventually emerged from his coma but the brain injury changed his personality, required physical, speech, and occupational therapy, and Plaintiff currently suffers from significant behavioral and memory deficits, including deficits in executive functioning, problem solving, planning, and balance. Plaintiff's injuries have rendered him dependent on others for: (1) dressing ; (2) feeding; (3) toileting; (4) assistance in daily activities; (5) grooming; (6) bathing; and (7) home management. Southern Fiber and Key Risk, as Southern Fiber's insurance carrier, admitted that Plaintiff's injuries were compensable.
 

 While Plaintiff was in inpatient care, Key Risk was informed multiple times that Plaintiff would require 24-hour care upon discharge. Rather than provide for care at an assisted living center or by an at-home professional caregiver, Key Risk and its employees arranged for Plaintiff's 18-year-old daughter, who had immigrated to the United States only two months prior, to assume all home care for Plaintiff. After approximately 11 weeks, Plaintiff's daughter moved him into the home of a family friend, who assumed caregiving duties. Key Risk did not pay Plaintiff's daughter or friend for assuming the 24-hour care of Plaintiff.
 

 Plaintiff saw an authorized treating physician, Dr. Flora Hammond, throughout 2003, 2004, and 2005. Dr. Hammond performed multiple tests on Plaintiff to discern the nature and extent of his condition, with each test showing symptoms consistent with traumatic brain injury. Dr. Hammond also requested an occupational home therapy evaluation, as she recognized that Plaintiff continued to suffer injuries as a result of several falls stemming from his balance issues. Key Risk denied the request and refused to provide the evaluation. Dr. Hammond later requested an evaluation by a neurologist, which Key Risk again declined to provide; instead, Plaintiff was evaluated by Dr. Thomas Gaultieri, a
 
 *204
 
 neuropsychologist. Key Risk refused to authorize continued treatment by Dr. Hammond after Plaintiff was referred to Dr. Gaultieri.
 

 Dr. Gaultieri treated Plaintiff from 2005 to mid-2007. Though he first believed Plaintiff was legitimately suffering from the conditions described above, Key Risk eventually provided Dr. Gaultieri with video footage that convinced him otherwise. The video, cut from 9 hours of surveillance footage taken by Key Risk over a six-month period and edited down to 45 minutes, led Dr. Gaultieri to opine that Plaintiff was willfully exaggerating his symptoms and that he needed no further treatment.
 

 The above conduct by Key Risk in administering Plaintiff's care for an admittedly compensable injury led to considerable litigation. In 2008, a deputy commissioner of the Commission ordered Key Risk to authorize further treatment by Dr. Hammond, and Plaintiff returned to her care. In 2010, after Key Risk argued that Plaintiff's benefits should be cut off for fraud and misrepresentation, a deputy commissioner entered an opinion and award requiring Key Risk to pay continued compensation for Plaintiff's care. On 29 April 2011, the Full Commission entered its own opinion and award in Plaintiff's favor (the "Opinion and Award"). Not only
 
 *746
 
 did the Full Commission award Plaintiff continued benefits, but it concluded as a matter of law that "[Key Risk and Southern Fiber] brought and defended this claim without reasonable grounds. ... [Key Risk's and Southern Fiber's] position is not based upon reason." As a result, the Full Commission awarded Plaintiff attorney's fees, continued Key Risk's payment obligations in the amount of $345.35 per week "until further Order of the [Commission,]" and ordered that Plaintiff's daughter and family friend be reimbursed for their caregiving services, finding that Key Risk's refusal to pay prior to the entry of the Opinion and Award "was unreasonable and ... constituted stubborn, unfounded litigiousness." Key Risk filed an untimely appeal of the Full Commission's decision to this Court, which was dismissed by order. Order,
 
 Seguro-Suarez v. Southern Fiber
 
 , COA12-238-1 (N.C. Ct. App. May 15, 2012). Key Risk next petitioned the North Carolina Supreme Court for writ of certiorari, but its petition was denied.
 
 Seguro-Suarez v. Southern Fiber
 
 ,
 
 366 N.C. 408
 
 ,
 
 735 S.E.2d 324
 
 (2012).
 

 Following its losses before the Commission, and after exhausting its appeal efforts, Key Risk, by and through its employees Individual Defendants, hired Carolina Investigative Services and Robert E. Hill (the "Investigator") to surreptitiously surveil and record Plaintiff for several weeks. Key Risk also arranged for an independent medical exam of Plaintiff on 10 June 2013 in order to determine whether his symptoms were legitimate and if Plaintiff actually required ongoing care.
 

 *205
 
 The forensic psychiatrist who examined Plaintiff observed Plaintiff's "childlike" demeanor and concluded he was suffering from dementia, traumatic brain injury, chronic dizziness, and chronic headaches-all stemming from his workplace injury. Key Risk's chosen examiner further opined that Plaintiff's "symptoms appeared to be valid. There was no apparent malingering, in [her] opinion."
 

 The mounting medical evidence and full-throated rebuke from the Commission left Key Risk undeterred in its efforts to undermine Plaintiff's medical diagnosis and continued care. After the independent medical exam, Key Risk directed its Investigator to convince the Lincolnton Police Department (the "LPD") to bring criminal charges against Plaintiff under the theory that he was obtaining his workers' compensation benefits by false pretenses,
 
 i.e.
 
 , by faking his diagnosed symptoms from his traumatic brain injury. The Investigator provided the LPD with an extensively edited videotape similar to that shown to Dr. Gaultieri in the proceeding before the Commission; as a result, the LPD arrested and jailed Plaintiff on 24 October 2013. On 10 March 2014, Plaintiff was indicted on 25 counts of obtaining property by false pretenses and one count of insurance fraud, all for accepting the checks ordered paid to him by the Commission.
 

 After his first appearance in criminal court, Plaintiff was ordered to undergo a psychological examination at Central Regional Hospital in Butner, North Carolina to determine his competency to stand trial. The examining psychologist noted that Plaintiff "exhibited cognitive deficit consistent with his documented history, including memory impairment [,]" and concluded that Plaintiff was mentally incapable of both proceeding to trial and effectively assisting counsel. The State ultimately dismissed all charges against Plaintiff after a hearing in which the trial court asked the State if it "really want[ed] to assist in the establishment of a malicious prosecution claim[,]" and expressed "some real concerns when a man is drawing a check pursuant to an order, in effect, pursuant to a court order, and one side doesn't like the court order and decides to take out criminal charges because they disagree with what the ruling was."
 

 After his release from custody, Plaintiff filed suit against Defendants and the Investigator in Mecklenburg County Superior Court, asserting causes of action for: (1) malicious prosecution; (2) abuse of process; (3) UDTP; (4) bad faith; (5) willful and wanton conduct; (6) civil conspiracy; and (7) punitive damages. Plaintiff's complaint asserts that Defendants undertook the above actions with the aim of terminating Plaintiff's workers' compensation benefits and relieving Key Risk of its financial burden. Defendants filed a motion to dismiss pursuant to
 
 *747
 

 *206
 
 Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the trial court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. The trial court denied Defendants' motion by order entered 30 January 2017, and Defendants timely filed their notice of appeal on 13 February 2017.
 

 II.
 
 ANALYSIS
 

 A. Appellate Jurisdiction
 

 The denial of a motion to dismiss brought pursuant to Rules 12(b)(1) and 12(b)(6) is an interlocutory order and typically not subject to immediate appellate review unless it affects a substantial right.
 
 See, e.g.,
 

 Murray v. Univ. of N.C. at Chapel Hill
 
 ,
 
 246 N.C. App. 86
 
 , 91-95,
 
 782 S.E.2d 531
 
 , 535-37 (2016),
 
 aff'd per curiam
 
 ,
 
 369 N.C. 585
 
 ,
 
 799 S.E.2d 612
 
 (2017) (reviewing case law concerning immediate appeals of motions to dismiss under Rules 12(b)(1) and 12(b)(6) ). However, "our Supreme Court has determined that the denial of a motion to dismiss under Rule 12(b)(1) and the exclusivity provision of the [Workers' Compensation] Act affects a substantial right 'and will work injury if not corrected before final judgment ....' "
 
 Estate of Vaughn v. Pike Elec., LLC
 
 ,
 
 230 N.C. App. 485
 
 , 491,
 
 751 S.E.2d 227
 
 , 231 (2013) (quoting
 
 Burton v. Phx. Fabricators & Erectors, Inc.
 
 ,
 
 362 N.C. 352
 
 ,
 
 661 S.E.2d 242
 
 (2008) ). Because Defendants' motion to dismiss expressly "contend[s] that th[e trial court] lacks subject matter jurisdiction ... pursuant to the North Carolina Workers' Compensation Act" under Rule 12(b)(1), the denial of their motion on that ground affects a substantial right and is immediately appealable.
 
 See
 

 Vaughn
 
 ,
 
 230 N.C. App. at 491
 
 ,
 
 751 S.E.2d at 231
 
 .
 

 As for the denial of Defendants' motion to dismiss pursuant to Rule 12(b)(6), Defendants request that we exercise our discretion to consider their appeal thereof "to expedite the administration of justice," as allowed in
 
 Flaherty v. Hunt
 
 ,
 
 82 N.C. App. 112
 
 , 113,
 
 345 S.E.2d 426
 
 , 427 (1986). Plaintiff, for his part, asserts no argument against such an exercise. Because this Court already has jurisdiction over the denial of Defendants' motion pursuant to Rule 12(b)(1), and in the absence of any argument to the contrary, we exercise our discretion to hear Defendants' appeal of the denial of their motion to dismiss under Rule 12(b)(6).
 
 Id
 
 . at 113-14,
 
 345 S.E.2d at 428
 
 .
 

 B. Standards of Review
 

 We consider the denial of a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction
 
 de novo
 
 , in which we "consider[ ] the matter anew and freely substitute[ ] [our] judgment for that of the
 
 *207
 
 [trial court]."
 
 Blow v. DSM Pharms., Inc.
 
 ,
 
 197 N.C. App. 586
 
 , 588,
 
 678 S.E.2d 245
 
 , 248 (2009) (internal quotation marks and citation omitted) (final alteration in original). In this review, we take as true all allegations in the complaint.
 
 Good Hope Hosp., Inc. v. N.C. Dept. of Health and Human Svcs.
 
 ,
 
 174 N.C. App. 266
 
 , 274,
 
 620 S.E.2d 873
 
 , 880 (2005). But we also are permitted to consider matters outside the pleadings.
 
 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 271,
 
 643 S.E.2d 566
 
 , 570 (2007).
 

 Similarly, we apply the
 
 de novo
 
 standard to review a trial court's ruling on a motion to dismiss pursuant to Rule 12(b)(6).
 
 Green v. Kearney
 
 ,
 
 203 N.C. App. 260
 
 , 265,
 
 690 S.E.2d 755
 
 , 761 (2010). "The scope of our review is 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' "
 
 Holton v. Holton
 
 , --- N.C. App. ----, ----,
 
 813 S.E.2d 649
 
 , 655 (2018) (quoting
 
 State Emps. Ass'n of N.C., Inc. v. N.C. Dep't of State Treasurer
 
 ,
 
 364 N.C. 205
 
 , 210,
 
 695 S.E.2d 91
 
 , 95 (2010) ). "We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim."
 
 Christmas v. Cabarrus Cty.
 
 ,
 
 192 N.C. App. 227
 
 , 231,
 
 664 S.E.2d 649
 
 , 652 (2008) (citation omitted).
 

 C. Subject Matter Jurisdiction
 

 Defendants argue that three prior decisions by this Court compel a conclusion that the Commission exercises exclusive jurisdiction over the tort claims alleged in
 
 *748
 
 Plaintiff's complaint. We reject this argument, because each of the prior decisions is inapposite to this matter. We address each in turn.
 

 In
 
 Johnson v. First Union Corp.
 
 ,
 
 131 N.C. App. 142
 
 ,
 
 504 S.E.2d 808
 
 (1998), we held that the Commission has exclusive jurisdiction "over workers compensation claims and all related matters ...."
 
 131 N.C. App. at 143-44
 
 ,
 
 504 S.E.2d at 809
 
 .
 
 Johnson
 
 involved alleged tortious acts in the procedural course of workers' compensation proceedings that directly resulted in claims being denied by the Commission.
 
 Id.
 
 at 143,
 
 504 S.E.2d at 809
 
 . The plaintiffs, two employees previously diagnosed with repetitive motion injuries, brought suit in superior court alleging that their employer and its insurance carrier presented a fraudulent videotape to their physician inaccurately portraying the physical requirements of their jobs, causing the physician to withdraw the diagnosis of work-related injury.
 
 Id.
 
 at 143,
 
 504 S.E.2d at 809
 
 . One plaintiff also alleged that the employer fraudulently altered a workers' compensation form after she had signed it, further interfering with the proceeding.
 

 *208
 

 Id.
 
 at 143,
 
 504 S.E.2d at 809
 
 . We held that the Commission had exclusive jurisdiction to address fraud in the settlement of a workers' compensation claim and affirmed the trial court's dismissal of the plaintiffs' civil claims because "the Workers' Compensation Act is a comprehensive regulatory scheme, and collateral attacks are inappropriate."
 
 Id.
 
 at 145,
 
 504 S.E.2d at 810
 
 .
 

 In
 
 Deem v. Treadaway & Sons Painting & Wallcovering, Inc.
 
 ,
 
 142 N.C. App. 472
 
 , 477-78,
 
 543 S.E.2d 209
 
 , 212-13 (2001), the plaintiff filed suit in superior court to set aside the settlement of his workers' compensation claim, alleging that it was predicated on fraudulent and unlawful acts committed by the defendants, including his employer and its insurer. We held that, because the Commission possessed express statutory authority to set aside a workers' compensation settlement for fraud, the "plaintiff's sole remedy in this case was to petition the Industrial Commission to set aside his agreement ...."
 
 Id.
 
 at 478,
 
 543 S.E.2d at 212
 
 . We reasoned that the plaintiff's complaint was "nothing more than an allegation that defendants did not appropriately handle his workers' compensation claim, and thus he was injured because he did not receive his entitled benefit. This is the exact argument of the
 
 Johnson
 
 plaintiffs ...."
 
 Id.
 
 at 477,
 
 543 S.E.2d at 212
 
 .
 

 Bowden v. Young
 
 ,
 
 239 N.C. App. 287
 
 ,
 
 768 S.E.2d 622
 
 (2015), like
 
 Deem
 
 and
 
 Johnson
 
 , involved alleged tortious acts conducted within the course of a workers' compensation proceeding in the Commission. The employee in
 
 Bowden
 
 brought suit in superior court for bad faith and intentional infliction of emotional distress, asserting that his employer's insurance carrier "communicated with his doctors without his permission[,] ... wrongly sought a second opinion[,] ... treated him belligerently over the phone, denied some of his requests for medical treatment via 'form letter,' improperly filed paperwork to suspend his compensation, and 'insisted that [the employee] needed to settle his Workers Compensation claim.' "
 
 239 N.C. App. at 289
 
 ,
 
 768 S.E.2d at 624
 
 . In affirming the trial court's dismissal of the action, this Court explained that "[w]e distill from
 
 Johnson
 
 and
 
 Deem
 
 a straightforward rule: all claims arising from an employer's or insurer's processing and handling of a workers' compensation claim fall within the exclusive jurisdiction of the Industrial Commission, regardless of whether the alleged conduct was intentional or merely negligent."
 
 Id.
 
 at 291,
 
 768 S.E.2d at 625
 
 .
 

 We further recognized in
 
 Bowden
 
 that the " 'the Industrial Commission, charged with administration of the Workers' Compensation Act, is better suited than the Court to identify and regulate alleged abuses, if any, by insurance carriers and health care providers in matters under the
 
 *209
 
 Workers' Compensation Act.' "
 
 Id.
 
 at 290,
 
 768 S.E.2d at 624-25
 
 (quoting
 
 N.C. Chiropractic Ass'n, Inc. v. Aetna Cas. & Sur. Co.
 
 ,
 
 89 N.C. App. 1
 
 , 9,
 
 365 S.E.2d 312
 
 , 316 (1988) ). Although we acknowledged that intentional torts "generally fall outside the scope of the Workers' Compensation Act,"
 
 id.
 
 at 290,
 
 768 S.E.2d at
 
 625 (citing
 
 Woodson v. Rowland
 
 ,
 
 329 N.C. 330
 
 , 340-41,
 
 407 S.E.2d 222
 
 , 228 (1991) ), we affirmed the trial court's dismissal of the employee's
 
 *749
 
 complaint, because "
 
 all
 
 claims concerning the
 
 processing
 
 and
 
 handling
 
 of a workers' compensation claim are within the exclusive jurisdiction of the Industrial Commission, whether the alleged conduct is intentional or not."
 

 Id.
 

 at 290-91
 
 ,
 
 768 S.E.2d at
 
 625 (citing
 
 Johnson
 
 ,
 
 131 N.C. App. at 143-44
 
 ,
 
 504 S.E.2d at
 
 809 ;
 
 Deem
 
 ,
 
 142 N.C. App. at 477-78
 
 ,
 
 543 S.E.2d at
 
 212 ) (emphasis in original).
 

 To apply the "straightforward rule" recognized in
 
 Johnson
 
 ,
 
 Deem
 

 ,
 
 and
 
 Bowden
 
 to Plaintiff's action, as Defendants request, would stretch it beyond its factual and legal underpinnings. Plaintiff's complaint does not allege that he has been denied any workers' compensation benefits; to the contrary, he acknowledged at the final hearing in the criminal matter that Key Risk was still making the workers' compensation payments. Plaintiff's action, therefore, is markedly different from those brought in
 
 Johnson
 
 and
 
 Deem
 
 , which involved "allegation[s] that defendants did not appropriately handle his workers' compensation claim, and thus he was injured
 
 because he did not receive his entitled benefit
 
 ."
 
 Deem
 
 ,
 
 142 N.C. App. at 477
 
 ,
 
 543 S.E.2d at 212
 
 (emphasis added);
 
 see also
 

 Johnson
 
 ,
 
 131 N.C. App. at 143-44
 
 ,
 
 504 S.E.2d at 809
 
 . Plaintiff's case is further distinguishable from
 
 Johnson
 
 ,
 
 Deem
 
 , and
 
 Bowden
 
 because, fundamentally, it does not concern the "
 
 processing
 
 and
 
 handling
 
 of a workers' compensation claim ...."
 
 Bowden
 
 ,
 
 239 N.C. App. at 290
 
 ,
 
 768 S.E.2d at
 
 625 (citing
 
 Johnson
 
 ,
 
 131 N.C. App. at 143-44
 
 ,
 
 504 S.E.2d at
 
 809 and
 
 Deem
 
 ,
 
 142 N.C. App. at 477-78
 
 ,
 
 543 S.E.2d at
 
 212 ) (emphasis in original).
 

 Plaintiff's tort claims, though tangentially associated with his ongoing workers' compensation payments, concern the initiation and continued pursuit of
 
 a
 

 criminal prosecution
 
 , not a workers' compensation claim. "General jurisdiction for the trial of criminal actions is vested in the superior court and the district court divisions of the General Court of Justice." N.C. Gen. Stat. § 7A-270 (2017). By contrast, "the North Carolina
 
 *210
 
 Industrial Commission is not a court of general jurisdiction; the Commission is a quasi-judicial administrative board created by the legislature to administer the Workers' Compensation Act and has no authority beyond that provided by statute."
 
 Cornell v. W. and S. Life Ins. Co.
 
 ,
 
 162 N.C. App. 106
 
 , 108,
 
 590 S.E.2d 294
 
 , 296 (2004) ;
 
 see also
 

 Barber v. Minges
 
 ,
 
 223 N.C. 213
 
 , 217,
 
 25 S.E.2d 837
 
 , 839 (1943) ("The Industrial Commission is not a court of general jurisdiction.
 
 It can have no implied jurisdiction beyond the presumption that it is clothed with power to perform the duties required of it by the law entrusted to it for administration
 
 ." (emphasis added) ).
 

 Law enforcement officers and prosecutors employed by the State and its subdivisions are not tasked with "processing and handling" workers' compensation claims, and neither are the district and superior court divisions of the General Court of Justice. Malicious use and abuse thereof, therefore, does not "aris[e] from ... [the] processing and handling of a workers' compensation claim ... within the exclusive jurisdiction of the Industrial Commission[.]"
 
 Bowden
 
 ,
 
 239 N.C. App. at 290
 
 ,
 
 768 S.E.2d at 625
 
 .
 

 Although Plaintiff's complaint alleges that Defendants committed tortious acts in order to avoid liability to pay his workers' compensation, motivational concerns are irrelevant to our analysis. Taken to its logical end, this argument would allow a workers' compensation carrier to hire an assassin to kill an injured employee in order to terminate ongoing workers' compensation but avoid tort liability for wrongful death in civil court. Our Supreme Court has expressly held that:
 

 When an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in the case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort,
 
 and civil actions based thereon are not barred by the exclusivity provisions of the [Workers' Compensation] Act
 
 .
 

 Woodson
 
 ,
 
 329 N.C. at 340-41
 
 ,
 
 407 S.E.2d at 228
 
 (emphasis added). Indeed,
 
 Bowden
 
 recognized that "intentional torts generally fall outside the scope of the Workers' Compensation Act" based on
 
 Woodson
 
 ,
 
 *750
 

 239 N.C. App. at 290
 
 ,
 
 768 S.E.2d at 625
 
 , and "distilled from
 
 Johnson
 
 and
 
 Deem
 
 a straightforward rule" that operates independently of any motivational considerations. That rule is limited to "all claims arising from an employer's or insurer's processing and handling of a workers' compensation claim ... regardless of whether the alleged conduct was intentional or merely negligent."
 
 239 N.C. App. at 291
 
 ,
 
 768 S.E.2d at 625
 
 .
 

 Because the acts complained of in Plaintiff's complaint do not "aris[e] from an employer's or insurer's processing and handling of a workers' compensation claim[,]"
 
 id.
 
 at 291,
 
 768 S.E.2d at 625
 
 , we reject
 
 *211
 
 Defendants' argument that motivational considerations, rather than the factual and legal underpinnings of this case, would somehow bring this action within the exclusive jurisdiction of the Commission.
 
 [2]
 
 Plaintiff's claims do not fall within the scope of the Workers' Compensation Act, and, as a result, the trial court did not err in denying Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).
 

 D. Rule 12(b)(6)
 

 In the alternative to their argument under Rule 12(b)(1), Defendants posit that Plaintiff's complaint entirely fails to state a claim upon which relief can be granted under Rule 12(b)(6). We therefore address each of Plaintiff's individual claims in turn.
 

 1.
 

 Malicious Prosecution
 

 Plaintiff's first claim seeks redress for malicious prosecution. "To establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff."
 
 Turner v. Thomas
 
 ,
 
 369 N.C. 419
 
 , 425,
 
 794 S.E.2d 439
 
 , 444 (2016) (citing
 
 N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.
 
 ,
 
 366 N.C. 505
 
 , 512,
 
 742 S.E.2d 781
 
 , 786 (2013) ). Defendants contend that Plaintiff has failed to allege the first "initiation" element of a malicious prosecution claim because, under their reading of
 
 Farm Bureau
 
 , "[p]arties cannot be liable for malicious prosecution where they provide information to law enforcement and prosecutors later decide to initiate criminal proceedings based on that information, even if the information provided was inaccurate or incomplete." Defendants' argument is unpersuasive.
 

 In
 
 Farm Bureau
 
 , an investigator for the insurance company conducted an in-depth investigation of a house fire following a claim by an insured. 366 N.C. at 508-509,
 
 742 S.E.2d at 784-85
 
 . The investigator
 
 *212
 
 discovered evidence suggesting that the house fire was not an accident but the result of arson on the part of the insured, and he provided this information to local law enforcement.
 
 Id.
 
 at 509-10,
 
 742 S.E.2d at 785
 
 . Law enforcement arrested the insured but the district attorney later dismissed all criminal charges; the insured thereafter brought a malicious prosecution claim against the insurance company.
 
 Id.
 
 at 510,
 
 742 S.E.2d at 785
 
 . Following a bench trial, the insurer was found liable for malicious prosecution, a ruling that was later affirmed by this Court on the basis that, but for the insurer's actions, the insured would not have been prosecuted. North Carolina Farm Bureau Mutual Insurance Company v. Cully's Motorcross Park Inc.,
 
 220 N.C. App. 212
 
 ,
 
 725 S.E.2d 638
 
 (2012). The Supreme Court, however, reversed our decision, holding that "the Court of Appeals' interpretation of the element of initiation in a malicious prosecution case does not account adequately for the roles played by police and prosecutorial discretion."
 
 *751
 
 366 N.C. at 513,
 
 742 S.E.2d at 787
 
 . Our Supreme Court instead adopted the following language from the Restatement (Second) of Torts:
 

 Influencing a public prosecutor.
 
 A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information
 
 that he believes to be true
 
 , and the officer in exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
 

 Id.
 
 at 513,
 
 742 S.E.2d at 787
 
 (quoting Restatement (Second) of Torts § 653 cmt. g (1977) (emphasis added) ). Though the Court noted the Restatement's formulation "allows citizens to make reports in good faith to police and prosecutors without fear of retaliation if the information proves to be incomplete or inaccurate[,]" it went on to note that "[i]f the
 
 *213
 
 information is false,
 
 this formulation only protects a party who believes it to be true
 
 ...."
 
 Id.
 
 at 513-14,
 
 742 S.E.2d at 787
 
 (emphasis added). A party therefore "initiates" a malicious prosecution under
 
 Farm Bureau
 
 irrespective of independent prosecutorial discretion when it knowingly provides false information to authorities.
 
 Id.
 
 at 514,
 
 742 S.E.2d at 787
 
 .
 

 Here, Plaintiff's complaint alleges that Defendants "decided to falsely and maliciously accuse [Plaintiff] of committing insurance fraud and taking property by false pretenses," that they "caused criminal proceedings to be initiated against [him,]" and that they "acted with malice in providing false and misleading information to the [LPD] ...." It further alleges that Defendants "intentionally and maliciously caused incomplete, false and misleading information [to] be given to the [LPD] ...."
 
 [3]
 
 Employing a liberal construction of Plaintiff's complaint, we hold that these allegations are sufficient to survive Defendants' motion to dismiss pursuant to Rule 12(b)(6), and affirm the trial court's denial thereof on this claim.
 
 [4]
 

 2.
 

 Abuse of Process
 

 Plaintiff's second claim for relief is for abuse of process. "Two elements must be proved to find abuse of process: (1) that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) that the defendant committed some act that is a 'malicious misuse or misapplication of that process
 
 after issuance
 
 to accomplish some purpose not warranted or commanded by the writ.' "
 
 Pinewood Homes, Inc. v. Harris
 
 ,
 
 184 N.C. App. 597
 
 , 602,
 
 646 S.E.2d 826
 
 , 831 (2007) (quoting
 
 Stanback v. Stanback
 
 ,
 
 297 N.C. 181
 
 , 200,
 
 254 S.E.2d 611
 
 , 624 (1979) ) (emphasis in original). Here, Defendants contend that Plaintiff has failed to allege facts satisfying the second element because "the Complaint does not allege that the Defendants took any actions after providing information to the LPD." Again, we disagree. The complaint alleges that after Plaintiff was charged and arrested, "Defendants caused criminal proceedings to be continued against [him], which led to him being indicted ...." It further alleges that, "[a]fter the
 
 *752
 
 warrants for arrest were issued, the defendants used the process
 
 *214
 
 to attempt to recoup its [sic] funds ...." We hold these allegations are sufficient under our liberal pleading standards to set forth the second element of an abuse of process claim and affirm the trial court's denial of Defendants' motion on this ground.
 

 3.
 

 Unfair and Deceptive Trade Practices
 

 Plaintiff's third cause of action asserts a UDTP claim against Key Risk based on Section 75-1.1 of the North Carolina General Statutes. Defendants argue that Plaintiff's claim is barred for lack of privity, relying on our holding in
 
 Wilson v. Wilson
 
 ,
 
 121 N.C. App. 662
 
 ,
 
 468 S.E.2d 495
 
 (1996), that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under [N.C. Gen. Stat.] § 75-1.1."
 
 121 N.C. App. at 665
 
 ,
 
 468 S.E.2d at 497
 
 . Plaintiff contends that, because Key Risk was already obligated to pay him his workers' compensation benefits at the time of its tortious conduct,
 
 Wilson
 
 should not bar his claim. Reviewing
 
 Wilson
 
 and subsequent case law, we agree with Plaintiff.
 

 The same year that
 
 Wilson
 
 was decided, this Court held it was inapposite to a third party's UDTP claim against an insured driver's carrier.
 
 Murray v. Nationwide Mut. Ins. Co.
 
 ,
 
 123 N.C. App. 1
 
 , 15,
 
 472 S.E.2d 358
 
 , 366 (1996). In
 
 Murray
 
 , we first acknowledged that "[o]ur case law establishes that 'if the third party is an intended beneficiary, the law implies privity of contract.' " We then held that "[t]he injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party[,]" and that "the instant [third-party] plaintiff is in contractual privity with [the driver's carrier], and for this reason alone, is not bound by the third-party restrictions set forth in
 
 Wilson
 
 ."
 
 Id.
 
 at 15,
 
 472 S.E.2d at 366
 
 . Nearly a decade later, we construed
 
 Murray
 
 to require a third-party plaintiff to first obtain a judgment before bringing a UDTP claim against the insurer.
 
 Craven v. Demidovich
 
 ,
 
 172 N.C. App. 340
 
 , 342,
 
 615 S.E.2d 722
 
 , 724 (2005).
 

 Most recently, this Court has summarized the rule of
 
 Murray
 
 and its progeny as follows: "In the automobile accident context, an injured party is recognized as a third-party beneficiary to the liability insurance policy, because, under the statute, '[t]he primary purpose of th[e] compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists.' "
 
 USA Trouser, S.A. de C.V. v. Williams
 
 , --- N.C. App. ----, ----,
 
 812 S.E.2d 373
 
 , 377 (2018) (quoting
 
 Nationwide Mut. Ins. Co. v. Chantos
 
 ,
 
 293 N.C. 431
 
 , 440,
 
 238 S.E.2d 597
 
 , 604 (1977) ). This Court has further recognized the imposition of privity between third parties and insurers sufficient to
 
 *215
 
 support a UDTP claim when similar statutory obligations exist for like purposes.
 
 Nash Hosps., Inc. v. State Farm Mut. Auto. Ins. Co.
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 256
 
 , 263 (2017) (holding insurance company liable for payment practices violating the statutory subrogation rights of a claimant's medical providers),
 
 disc. rev. denied
 
 ,
 
 370 N.C. 578
 
 ,
 
 809 S.E.2d 869
 
 (2018).
 

 In
 
 Nash Hospitals
 
 , after providing medical treatment to a person injured in an automobile accident, Nash Hospitals sent notice of a medical lien to State Farm, the injuring party's insurer.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 259
 
 . The injured person, unrepresented by counsel, negotiated a settlement with the insurer, State Farm, who issued a joint check to the injured person, Nash Hospitals, and a third medical lienholder.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 258-59
 
 . Nash Hospitals informed State Farm that the issuance of a joint check violated Sections 44-49 and 44-50 of our General Statutes, which required insurers to pay valid medical liens prior to any settlement disbursement to a claimant.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 259
 
 . When State Farm refused to otherwise satisfy the medical lien, Nash Hospitals filed suit for UDTP against State Farm and ultimately obtained a favorable judgment on the merits.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 259
 
 . State Farm appealed the judgment, arguing that, based on
 
 Wilson
 
 , Nash Hospitals lacked privity to sue the insurer.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 262-63
 
 . We disagreed, holding that, because Sections 44-49
 
 *753
 
 and 44-50 were enacted "to protect hospitals and other health care providers that provide medical services to injured persons[,]" they "expanded the scope of [third-party beneficiary] privity to hospitals and medical service providers."
 

 Id.
 

 at ----,
 
 803 S.E.2d at 263
 
 . Because Nash Hospitals was in statutory privity with State Farm, and because the UDTP claim involved post-settlement conduct, we held
 
 Wilson
 
 inapposite and affirmed that portion of the trial court's judgment.
 

 Id.
 

 at ----,
 
 803 S.E.2d at 263
 
 .
 

 Like compulsory automobile insurance, "[t]he General Assembly has mandated that every employer subject to the Workers' Compensation Act maintain the ability to pay compensation benefits, either by purchasing workers' compensation insurance ... or by self-insuring."
 
 N.C. Ins. Guar. Ass'n v. Board of Trs. of Guilford Tech. Cmty. College
 
 ,
 
 364 N.C. 102
 
 , 108-09,
 
 691 S.E.2d 694
 
 , 698 (2010) (citing
 
 N.C. Gen. Stat. § 97-93
 
 (2007) ). And, just as "[t]he primary purpose of th[e] compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists[,]"
 
 Chantos
 
 ,
 
 293 N.C. at 440
 
 ,
 
 238 S.E.2d at 604
 
 , "[t]he [p]rimary consideration [of the Workers' Compensation Act] is compensation for injured employees. ... 'The title and theory of the act import the idea of compensation for work[ers] and their dependents.' "
 

 *216
 

 Roberts v. City Ice & Fuel Co.
 
 ,
 
 210 N.C. 17
 
 , 21,
 
 185 S.E. 438
 
 , 440-41 (1936) (quoting
 
 Hodges v. Mortgage Co.
 
 ,
 
 201 N.C. 701
 
 , 704,
 
 161 S.E. 220
 
 , 222 (1931) ).
 

 Given the marked similarities between the compulsory automobile and workers' compensation insurance statutes, the reasoning in
 
 Murray
 
 that an "injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party,"
 
 123 N.C. App. at 15
 
 ,
 
 472 S.E.2d at 366
 
 , supports our holding that Plaintiff is an intended third-party beneficiary of Southern Fiber's insurance contract with Key Risk. Indeed, the Workers' Compensation Act itself provides that a workers' compensation insurance policy must "contain[ ] the agreement of the insurer that it will promptly pay to the person entitled to same all benefits conferred by this Article. ... Such agreement shall be construed to be
 
 a direct promise by the insurer to the person entitled to compensation enforceable in his name
 
 ."
 
 N.C. Gen. Stat. § 97-98
 
 (2017) (emphasis added). Our Supreme Court has held that this provision creates an express benefit for, and enforceable by, the employee.
 
 See
 

 Hartsell v. Thermoid Co., Southern Division
 
 ,
 
 249 N.C. 527
 
 , 533,
 
 107 S.E.2d 115
 
 , 119 (1959) ("Under the Act, plaintiff has a right to enforce the insurance contract
 
 made for his benefit
 
 ." (citing
 
 N.C. Gen. Stat. § 97-98
 
 ) ). Because employees are, by statutory mandate, intended third-party beneficiaries of their employers' compulsory insurance policies, we hold that "the instant plaintiff is in contractual privity [with the insurer] ... and for this reason alone, is not bound by the third-party restrictions set forth in
 
 Wilson
 
 ."
 
 Murray
 
 ,
 
 123 N.C. App. at 15
 
 ,
 
 472 S.E.2d at 366
 
 .
 

 Defendants urge this Court to reach a contrary result on the basis that they continue to litigate Plaintiff's compensation pursuant to
 
 N.C. Gen. Stat. § 97-18.1
 
 (c), so that the Opinion and Award requiring payment to Plaintiff is not akin to a civil judgment. Defendants further argue that allowing Plaintiff's UDTP claim to continue creates a potential conflict of interest for Key Risk with respect to its insured, Plaintiff's employer.
 
 See
 

 Wilson
 
 ,
 
 121 N.C. App. at 667
 
 ,
 
 468 S.E.2d at 498
 
 ("[A]llowing a third-party claim against the insurer of an adverse party for violating [N.C. Gen. Stat.] § 58-63-15 may result in a conflict of interest for the insurance company.");
 
 but see
 

 Murray
 
 ,
 
 123 N.C. App. at 10
 
 ,
 
 472 S.E.2d at 363
 
 (holding a third-party beneficiary of an automobile liability insurance contract could pursue a UDTP claim against the insured's carrier for violation of
 
 N.C. Gen. Stat. § 58-63-15
 
 ). We reject these arguments.
 

 Unlike the insurer in
 
 Wilson
 
 , Defendants have an ongoing legal obligation to pay Plaintiff as required by the Opinion and Award and Key Risk's own insurance policy with Southern Fiber. "[W]here the policy of
 
 *217
 
 insurance is against liability ... and the liability of the insured has been established by judgment, the injured person may maintain an action on the policy of insurance,
 
 that
 

 *754
 

 is, coverage attaches when liability attaches
 
 ...."
 
 Hall v. Harleysville Mut. Cas. Co.
 
 ,
 
 233 N.C. 339
 
 , 340,
 
 64 S.E.2d 160
 
 , 161 (1951) (citations omitted) (emphasis added);
 
 see also
 

 Craven
 
 ,
 
 172 N.C. App. at 342
 
 ,
 
 615 S.E.2d at 724
 
 (2005) (quoting
 
 Lavender v. State Farm. Mut. Auto. Ins. Co.
 
 ,
 
 117 N.C. App. 135
 
 , 136,
 
 450 S.E.2d 34
 
 , 35 (1994), and
 
 Hall
 
 to explain the necessity of a civil judgment to bring a UDTP claim as a third-party beneficiary against an insurer under
 
 Murray
 
 ). Key Risk's insurance policy with Southern Fiber states that the former will "pay promptly when due the benefits required of [Southern Fiber] by the workers compensation law." Key Risk's liability to Plaintiff therefore attached, at the latest,
 
 [5]
 
 upon entry of the Opinion and Award, as "a payment is due and payable when the Commission has entered an opinion awarding benefits to a claimant."
 
 Smith v. Richardson Sports Ltd. I.C. Partners d/b/a Carolina Panthers
 
 ,
 
 172 N.C. App. 200
 
 , 206,
 
 616 S.E.2d 245
 
 , 250 (2005) (citation omitted).
 

 Also, Section 97-18.1 includes no provision allowing or authorizing an employer's carrier to maliciously seek the arrest, incarceration, and felony prosecution of an employee for accepting workers' compensation payments awarded to him by the Commission, and no such action is permitted by Key Risk's insurance policy with Southern Fiber.
 

 Wilson
 
 concerned a pre-trial UDTP complaint against both the insurer and the insured.
 
 121 N.C. App. at 666
 
 ,
 
 468 S.E.2d at 498
 
 . By contrast, Plaintiff's complaint in the instant action was filed against Key Risk-and not Southern Fiber-five years after the Opinion and Award was entered and left undisturbed on appeal, all while Key Risk continued to pay the benefits ordered thereunder and as required by its insurance contract with Southern Fiber. This case is therefore more akin to the UDTP action in
 
 Murray
 
 , which we held stated a viable claim.
 
 123 N.C. App. at 16
 
 ,
 
 472 S.E.2d at 366
 
 .
 

 4.
 

 Bad Faith and Civil Conspiracy
 

 Although we affirm the portion of the trial court's order denying the dismissal of Plaintiff's malicious prosecution, abuse of process, and UDTP claims, we are persuaded by Defendants' challenges to Plaintiff's bad faith and civil conspiracy claims. We address each claim in turn.
 

 *218
 
 A necessary element of a bad faith claim against an insurer is a refusal by the insurer to pay a valid claim.
 
 Lovell v. Nationwide Mut. Ins. Co.
 
 ,
 
 108 N.C. App. 416
 
 , 420,
 
 424 S.E.2d 181
 
 , 184 (1993). Plaintiff's complaint alleges no refusal to pay, and he acknowledges in his briefing that Key Risk "continued to pay his claim[.]" Though he argues that a bad faith claim "covers a wider variety of acts[ ] than simply failing to pay a legitimate claim," every case he cites concerns exactly that.
 
 See, e.g.,
 

 Newton v. Standard Fire Ins. Co.
 
 ,
 
 291 N.C. 105
 
 , 116,
 
 229 S.E.2d 297
 
 , 303 (1976) (noting that the tort exists to "deter refusals on the part of insurers to pay valid claims when the refusals are both unjustified and in bad faith"). Because Plaintiff has failed to plead a necessary element of this claim, we reverse this portion of the trial court's denial of Defendants' motion to dismiss.
 

 Like the bad faith claim, we also reverse the portion of the trial court's order denying dismissal of Plaintiff's civil conspiracy claim based on the intra-corporate immunity rule. The doctrine provides that, "because 'at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself.' "
 
 Conleys Creek Ltd. P'ship. v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 147
 
 , 156 (2017) (quoting
 
 State ex rel. Cooper v. Ridgeway Brands Mfg., LLC
 
 ,
 
 184 N.C. App. 613
 
 , 625,
 
 646 S.E.2d 790
 
 , 799 (2007),
 
 rev'd on other grounds
 
 ,
 
 State ex rel. Cooper v. Ridgeway Brands Mfg., LLC
 
 ,
 
 362 N.C. 431
 
 ,
 
 666 S.E.2d 107
 
 (2008) ). "[A]n allegation that a
 
 *755
 
 corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself[,]"
 
 State ex rel. Cooper
 
 , 184 N.C. App. at 625, 646 S.E.2d at 799, and is therefore insufficient to establish a claim for civil conspiracy. Here, Plaintiff asserts a civil conspiracy claim against Key Risk, several of its employees-all of whom were acting "in the course and scope of [their] employment" with Key Risk-and a private investigator hired by Key Risk. Nowhere in the complaint does Plaintiff allege that the various defendants conspired with anyone outside an employment or agent relationship with Key Risk. Nor does the complaint allege conduct outside of those employment or agency relationships.
 
 [6]
 
 Because Plaintiff's complaint fails to allege a conspiracy with anyone outside of Key Risk,
 
 *219
 
 its employees, and its agents, it fails to state a claim for which relief can be granted, and we reverse the trial court's order as to this claim.
 

 5.
 

 Punitive Damages
 

 Finally, Defendants argue that we should reverse the trial court's order as to Plaintiff's punitive damages claim because his complaint should have been dismissed in its entirety. As set forth
 
 supra
 
 , however, we hold that Plaintiff has stated tort claims for malicious prosecution, abuse of process, and UDTP sufficient to survive Defendants' motion to dismiss. His allegations of fraudulent, malicious, and willful and wanton conduct on the part of Defendants in perpetrating those acts are sufficient to allege punitive damages within the meaning of Section 1D-15 of our General Statutes. N.C. Gen. Stat. § 1D-15 (2017) ;
 
 see also, e.g.,
 

 Horne v. Cumberland Cty. Hosp. Sys., Inc.,
 

 228 N.C. App. 142
 
 , 150,
 
 746 S.E.2d 13
 
 , 20 (2013) (affirming dismissal of a punitive damages claim where all substantive claims were also properly dismissed). We reject Defendants' argument.
 

 III.
 
 CONCLUSION
 

 Plaintiff's tort claims, although they pertain to a workers' compensation award, do not, as a matter of fact or law, "arise[ ] from an ... insurer's processing and handling of a workers' compensation claim." Rather, Plaintiff's complaint arises out of a fraudulently and maliciously instituted criminal prosecution over which the Commission has no jurisdiction. Further, Plaintiff, as an injured employee who has obtained an award requiring payments to him under his employer's workers' compensation insurance policy is an intended third-party beneficiary of the policy in privity to bring a UDTP claim against the insurer. Plaintiff has sufficiently alleged claims for malicious prosecution, abuse of process, UDTP, and punitive damages; he has failed, however, to sufficiently allege claims for bad faith and civil conspiracy. For these reasons, we: (1) affirm the denial of Defendants' motion to dismiss all claims pursuant to Rule 12(b)(1) ; (2) affirm the denial of Defendants' motion pursuant to Rule 12(b)(6) as it pertains to Plaintiff's malicious prosecution, abuse of process, UDTP, and punitive damages claims; and (3) reverse the denial of Defendants' motion to dismiss pursuant to Rule 12(b)(6) as it pertains to Plaintiff's bad faith and civil conspiracy claims.
 

 AFFIRMED IN PART; REVERSED IN PART.
 

 Judges STROUD and DILLON concur.
 

 [1]
 

 The other defendants named in the action, Robert E. Hill and Carolina Investigative Services, Inc., did not appeal. We therefore limit our use of "Defendants" in this opinion to Key Risk and the Individual Defendants.
 

 [2]
 

 Defendants contend that an allegation in Plaintiff's complaint that Defendants' tortious acts "relate[d] to the defense of the worker's compensation claim" necessitates a holding that Plaintiff's action "arise[s] from" said workers' compensation claim. As explained
 
 supra
 
 , this is not so-that Defendants' motivation was to terminate the obligation to pay Plaintiff compensation does not render the tortious acts themselves "arising from ... [Key Risk's] processing and handling of [Plaintiff's] workers' compensation claim[,]"
 
 Bowden
 
 ,
 
 239 N.C. App. at 292
 
 ,
 
 768 S.E.2d at 625
 
 , where they in fact arise from the processing and handling of a criminal prosecution. This argument is analogous to the defense of a person charged with killing a homeowner in the course of a burglary, who argues that he cannot be prosecuted for murder because the death was only incidental to his motivation to steal.
 

 [3]
 

 Although this allegation is made under a different cause of action, dismissal under Rule 12(b)(6) is not proper where "the allegations of the complaint ... are sufficient to state a claim ... under some legal theory,
 
 whether properly labeled or not
 
 ."
 
 Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 576
 
 , 578 (2017) (emphasis added) (quoting
 
 Leary v. N.C. Forest Prods., Inc.,
 

 157 N.C. App. 396
 
 , 400,
 
 580 S.E.2d 1
 
 , 4 (2003) ).
 

 [4]
 

 Whether these allegations ultimately are supported by evidence is yet to be determined.
 

 [5]
 

 "By virtue of [
 
 N.C. Gen. Stat. § 97-98
 
 ], once the employer has accepted an injury as compensable, benefits are 'due and payable[.]' "
 
 Moretz v. Richards & Assocs., Inc.
 
 ,
 
 316 N.C. 539
 
 , 541,
 
 342 S.E.2d 844
 
 , 846 (1986). Here, the Opinion and Award includes a finding of fact that "Plaintiff sustained an admittedly compensable injury by accident .... Defendants accepted this claim ...."
 

 [6]
 

 We note that some jurisdictions provide for exceptions to intra-corporate immunity where: (1) the employees or agents possess an independent motive from their employer or principal; or (2) the alleged conspiratorial acts were taken outside the scope of the employment or agency.
 
 See, e.g.,
 

 Painter's Mill Grille, LLC v. Brown
 
 ,
 
 716 F.3d 342
 
 , 353 (4th Cir.2013). We need not determine the applicability of these exceptions to the instant case, however, because Plaintiff's complaint is devoid of any allegations that would fall within them.